IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Julio A. Rivera-Gomez**<br>*Plaintiff*<br>*v.*<br>**Luxury Hotels International of Puerto Rico, Inc. d/b/a The Ritz-Carlton San Juan Hotel, Spa & Casino a/k/a The Ritz-Carlton Hotel Company of Puerto Rico, Inc.**<br>*Defendant* | CIVIL ACTION<br>Case No. 3:16-cv-3087<br><br>ADEA/Wrongful discharge<br><br>**Demand for Jury Trial**<br>Plaintiff herby demands a trial by jury for the case. |

## COMPLAINT

### I.      INTRODUCTION

### Preliminary Statement

1.      This civil action challenges the unlawful failure of Luxury Hotels International of Puerto Rico, Inc. d/b/a The Ritz-Carlton San Juan Hotel, Spa & Casino a/k/a The Ritz-Carlton Hotel Company of Puerto Rico, Inc. (Hereinafter "**Ritz-Carlton**"), to prevent workplace *age* **discrimination** against the plaintiff.  Plaintiff Julio A. Rivera-Gomez ("**Rivera**"), is over **forty (40) year of age**. For approximately **seventeen (17) years** he worked for the Ritz-Carlton, where he was promoted and eventually appointed to the position of Banquet Chef in December 15, 2006.

2.      Plaintiff's performance over the years was never an issue, as he was often praised by Hotel management and coworkers, for his skills and performance.  He began in 1998 as Banquet Cook, shortly after was promoted to Chef de Partie and Banquet Sous Chef, then later as Acting Banquet Chef, until he was finally appointed as Ritz-Carlton's Banquet Chef.

3.      At some point during October 2014, newly appointed Chef Zampaglione and Executive Sous Chef Simon Porter began Rivera's selective prosecution to accelerate the process to remove him from the workplace.  His age, pay and tenure with the company, were often the subject of conversations.  As management made clear a desire to hire someone younger for less. After Rivera's termination Ritz-Carlton assigned the duties of his position to a younger employee.

4. Plaintiff was selectively targeted with fabricated accusation of underperformance and unjustified disciplinary actions were taken against him, to discredit his reputation and quickly find a way to justify his termination, at management's behest.  As management changes took place, newly appointed supervisors ignore plaintiff's decade long career at the Puerto Rico Ritz-Carlton.

5. At the time of his wrongful termination of employment, because of his age, Rivera was one of the oldest and highest paid employee at the Puerto Rico Ritz-Carlton's Banquet level.

6. Rivera respectfully asks this Court to find Defendant's treatment of him in violation of the Age Discrimination in Employment Act, as amended, and in violation of Puerto Rico Commonwealth's statutes, and to award the relief requested below.  Defendants violated Rivera's rights under federal law protecting workers from discrimination on the basis of age.  Defendants are jointly and severely liable for violating Rivera's rights under federal and Puerto Rico law.  Plaintiff seeks reinstatement, back pay and benefits, compensatory damages, and attorney fees.

## II.     JURISDICTION

7. This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), and pursuant to the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).  This Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.

8. Venue properly lies before this Court under 28 U.S.C. §1391(b).  Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district.  A substantial part of the events giving rise

to this suit arose on the premises of the Ritz-Carlton, located in the Commonwealth of Puerto Rico. Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

9.     Prior to filing this lawsuit, Rivera filed a timely written charge with the Equal Employment Opportunity Commission ("EEOC"), where he notified defendants and indicated discrimination based on his *age*. The charge placed defendants on notice of his claim under federal employment discrimination statutes, such as the Age Discrimination in Employment Act. He received a *Notice of Right to Sue*, which is included with this complaint.  See **Exhibits A.**

10.    On September 7, 2016, the EEOC issued a *Notice of Right to Sue*.  Rivera has filed this action within 90 days of receipt of the notice.  Accordingly, Rivera has exhausted all administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.

### III.     PARTIES

11.    Plaintiff *Julio A. Rivera-Gomez* ("**Rivera**") is a citizen of Rio Grande, Puerto Rico and at all relevant times was employed by Ritz-Carlton in the Commonwealth of Puerto Rico.  He is over forty (40) years of age, and worked as Banquet Chef until his termination of employment. He resides in the judicial District of Puerto Rico.

12.    Defendant Luxury Hotels International of Puerto Rico, Inc. d/b/a The Ritz-Carlton San Juan Hotel, Spa & Casino a/k/a The Ritz-Carlton Hotel Company of Puerto Rico, Inc. (Hereinafter "**Ritz-Carlton**") is a *for profit* corporation registered with the Commonwealth of Puerto Rico Department of State, with registration numbers 128735 and/or 10233.  According to Department records, the corporation's designated office address is 6961 Los Gobernadores Ave., Isla Verde, Carolina, Puerto Rico 00979 and mailing address One Marriott Drive, Dept. 52/924, Washington, D.C.  20058.  With telephone (787) 754-9090. Ritz-Carlton's representatives Chef Zampaglione and Executive Sous Chef Simon Porter were plaintiff's immediate supervisors at all relevant times, within the judicial District of Puerto Rico.

13. Defendants participated in and/or directed the unlawful violations alleged herein, or knew of violations and failed to prevent.  Individual defendants are jointly liable for damages.

## IV.     FACTUAL ALLEGATIONS

14. Plaintiff began working for Ritz-Carlton in October 6, 1998, as Banquet Cook, and over the years was promoted to Chef de Partie and Banquet Sous Chef.  He was eventually appointed Acting Banquet Chef during 2006, and from 2006 all the way up to his wrongful termination of employment on February 3, 2016, he worked as Ritz-Carlton's Banquet Chef.

15. On March 14, 2014, he was given pay increase of 2.6% for a Salary of $76,171.46.

16. From 1998 through to 2014, his performance always met employer's expectations.

17. During that period plaintiff was given awards and was recognized for his work. Which included Leader of the Quarter for 2007, Leader for the Year 2007 and Leader of the Quarter 2014.  He received an outstanding performance recognition for his Banquet Culinary Team.  He received First Class Banquet Culinary Team Award from the Company in 2006.  He later was given First Class recognition in 2007 and Best Supervisor of the Year Award by the Tourism Company of Puerto Rico.

18. In 2012, he was recognized by the employer as a Five Star Leader Nominee (Culinary) and was recognized as a Fourth Quarter Leader Nominee for Banquets in 2013.

19. During 2014, he was recognized with Award for Improvement in Food Banquets, and was a Second Quarter Culinary Leader Winner for 2014, with a First-Class Culinary Team award for May 2014.  Over the years, Rivera was also praised by many satisfied Hotel Customers.

20. Between 2006 through to 2010, Rivera was supervised by Jason Adams. In 2011 he was supervised by Javier Rosa (who left his employment), and during 2012 Azhar Mohammad. None of these immediate supervisors ever accused Rivera of serious performance or health issues.

21. During 2010 evaluation, he was recognized for his solid performance in leadership, building relationships and organizational capabilities. He was recognized as well, for his strong performance in managing execution in operational structure of his work area.

22. During 2013 evaluation, management recognized Rivera increased Banquet Food Quality score from 72.7% (2012) to 81.6% for 2013. He also increased employee engagement by more than 10 points from previous year. He reduced overtime of employees and met sustainability goal by 100%. Rivera was an exceptional employee with great potential until he met Zampaglione.

23. Chef Zampaglione and/or Porter did not belong to plaintiff's protected age group.

24. At some point during 2014, management changes occurred, Chef Zampaglione and Executive Sous Chef Simon Porter, became plaintiff's immediate supervisors. Zampaglione immediately engaged in selective prosecution of the plaintiff by fabricating unfounded allegations of plaintiff's supposed lack of performance. All the while, Zampaglione made it clear that Hotel should replace the plaintiff with someone much younger, who would work there for less.

25. On September 29, 2014, Rivera was given "verbal warning" (issued 10/1/2014) and several days later on October 1, 2014, he was also issued a "written warning" (issued 10/3/2014).

26. Rivera was given a Performance/Action Plan on November 7, 2014. Said plan was successfully completed, demonstrating plaintiff Rivera could improve performance successfully.

27. On August 14, 2015, he was given a "final written warning" with a 60-Day Action Plan, which was unrealistic and unattainable. The accusation of Rivera's lack of consistency, low employee engagement and lack of culinary growth of his Banquet team, were either fabricated or improbable. Zampaglione set Rivera up to fail with an unrealistic plan doomed from the start. By August 2015, Zampaglione's ongoing harassment of Rivera had failed to constructively force him to resign, and Zampaglione then resorted to fabricate food safety issues to justify his termination.

5

28. Rivera believes some of the accusation related to performance that were brought by Zampaglione, were attributable to Hotel's operational or technical problems, not within his control.

29. After a nervous breakdown, which was the result of Zampaglione's hostile working environment, Rivera obtained medical assistance from Worker's Compensation and filed his claim on August 24, 2015. Rivera underwent psychological and psychiatric treatment. Some of the medications he was given may have adversely impaired his attentiveness and level of performance.

30. When he returned to work on Friday, January 15, 2016, after completing a Worker's Compensation leave of absence, he was allowed by management to work as usual. Had there been a serious safety concern, his employer should not have allowed him back to work, but it did. However, the following day, on Saturday, January 16, 2016, he was placed on a "suspension" for allegedly, having failed to complete the employer's Action Plan given on August 15, 2015.

31. On February 3, 2016, plaintiff Rivera was involuntarily separated from his gainful employment by way of wrongful termination, based on a fabricated alleged lack of performance.

32. At various times between September 2015 through to January 2016, the plaintiff was not allowed back to work by the Worker's Compensation Fund. During said times, Rivera received medical treatment for depression and was prescribed medications impairing his abilities.

33. His employer was made aware of Zampaglione's hostile working environment, and Rivera's concerns on August 24, 2015, when Rivera gave a written statement to Human Resources. The employer failed to take actions to prevent Rivera's supervisor harassment or discrimination.

34. Rivera was discriminated by his employer, whose supervisor falsely accused him of and fabricated performance issues with the sole objective to justify his wrongful termination, as *pretext* for age discrimination. Rivera was humiliated by management in front of other employees.

35. Chef Zampaglione and Executive Sous Chef Simon Porter, at all relevant times, also targeted other employees over the protected age group (PAG), for selective prosecution. Some were constructively discharged by the employer and others were selectively terminated.

36. Shortly after Rivera's termination Ernesto Alvarado was promoted to Banquet Chef. He substituted Rivera, was younger and did not belong to Rivera's Protected Age Group. After experiencing difficulties with management, he left to go to work to the Grand Cayman.

37. Given that the plaintiff was substituted by Ritz-Carlton with a younger employee which did not belong to Rivera's protected age group, just as Zampaglione indicated to Rivera, a discriminatory *animus* can and should be inferred. The performance deficiencies were a fabricated pretext to discriminate against a seventeen-year company veteran on the account of his age (40).

38. Rivera was wrongfully deprived of his gainful employment, after seventeen (17) years of work for Ritz-Carlton, without severance pay. Zampaglione sought to exclude him, and the Ritz-Carlton placed a younger employee to perform essential functions of his job.

39. The Plaintiff now comes before this Court to seek only what is deem to be fair and just, thru reasonable compensation for damages as a result of his employer's willful deprivation of his meaningful employment after *17 years* of service to Ritz-Carlton.

## V.   CAUSES OF ACTIONS

### COUNT I: Violation of the Age Discrimination in Employment Act (29 U.S.C.A. §621 et. seq.)

40. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

41. Defendant discriminated against Plaintiff on the basis of his *age*.

42. The Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age. The plaintiff was approximately 40 years of age or older at time of his involuntary termination.

7

43. In this case the plaintiff can and will meet his burden of proving that his *age* was a determinative factor in his discharge, as he would not have been fired but for his age.  Rivera will make out a prima facia case for age discrimination by showing: (i) he was at least 40; (ii) his work was sufficient to meet employer's legitimate expectations (he did for 15 years); (iii) Ritz-Carlton took adverse employment action against him (termination); and (iv) a younger person was retained in his position (Ernesto Alvarado), upon Rivera's termination.  Ritz-Carlton did not treat Rivera age neutrally in taking adverse action at the behest of Zampaglione for unfounded accusations.

44. Plaintiff will show Ritz-Carlton proffered reason for his termination is but a pretext and his age was the but-for cause of his employer's adverse action.  Management conversations frequently focused on his age, experience in the company and pay, evidence of age-based animus.

45. Defendants are jointly and severally liable.

## COUNT II: WRONGFUL TERMINATION

46. The foregoing paragraphs are realleged and incorporated by reference herein.

47. The defendant's conduct as alleged at length herein constitutes the wrongful termination of plaintiff's employment.  In the absence of a *justifiable cause*, the stated reasons for defendant's conduct were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus* to remove the plaintiff from work because of his *age*.

48. The alleged plaintiff's performance (omissions and errors), which the employer claims to have justified his termination, were a *pretext* for age discrimination against one of the oldest and highest paid Banquet employee.  In the case at hand, the employer did not charge the plaintiff with a *pattern* of violations of employer's regulation, *until* Chef Zampaglione and Executive Sous Chef Porter were assigned to supervise him.  For an extensive period of time, from 1998 all the way through to 2014, the plaintiff always met his employer's performance standards.

8

49. Ritz-Carlton will fail to demonstrate that plaintiff's performance issues warranted the adverse employment action it sought and Plaintiff's involuntary separation of employment.

50. Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without *just cause* in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. By allowing discrimination towards the plaintiff, the employer sought to eliminate the plaintiff. In this case, management choose to selectively prosecute the plaintiff for alleged performance issues, a *pretext* for age discrimination.  The alleged conduct was not serious enough to warrant the termination of a seventeen (17) year Ritz-Carlton veteran, and management did not take the same disciplinary action against other similarity situated employees.

## COUNT III: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW

51. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

52. Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo").  It prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146. Specifically, it prohibits employers from taking adverse action against an employee because of his *age*, with regards to the terms and conditions of her employment, refusing to keep or reincorporate employee into his job, willful deprivation of employment and/or taking adverse actions that negatively affect his employment status.  It also creates a *presumption* against the employer.  In the above referenced case, the plaintiff belonged to a protected class of employees over 40 years of age, he was qualified for his job, was terminated and the position was given to younger person not protected by law.

53. Defendants are jointly and severally liable.

## COUNT IV: Intentional and/or Negligent Infliction of Emotional Distress

9

54.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

55.     Defendant intentionally and negligently inflicted serious emotional distress on the Plaintiff.  Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

56.     Defendant's actions and omissions were tortious and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated.  Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.
B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.
C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.
D. That this Honorable Court award *compensatory* and *general damages* in the amount of **$1,000,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.
E. That this Honorable Court award *exemplary* and *punitive damages* in the amount of **$2,000,000.00** against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights.
F. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.

G. Pre-judgment interest; and

H. Any other relief this Court deems equitable, just and appropriate.

## VII.   JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 5th day of December of 2016.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**

PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: hcobo@hcounsel.com

### CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*